### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAROLYN A.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    24-cv-1769** |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### <u>MEMORANDUM OPINION</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **March 14, 2025**

Carolyn A. ("Plaintiff") brought this action seeking review of the Commissioner of Social Security Administration's ("SSA") decision denying her claim for Social Security Disability Insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act"). This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 10) is **GRANTED**.

### I.    PROCEDURAL HISTORY

Plaintiff protectively filed the instant application for disability benefits on May 14, 2021, alleging disability beginning July 1, 2020, due to attention deficit hyperactive disorder ("ADHD"), chronic pain syndrome, depression, Ehlers-Danlos syndrome, posttraumatic stress disorder ("PTSD"), anxiety, idiopathic scoliosis, hypermobility syndrome, inflammatory polyarthropathy, left arm pain, and cervical paraspinal spasms.  (R. 10, 87).  Plaintiff's application was denied at the initial level on December 8, 2021, and upon reconsideration on July 19, 2022.  (R. 10, 58-77).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 100-01).  Plaintiff—represented by counsel—as well as a vocational expert

("VE"), testified at the April 18, 2023, administrative hearing.  (R. 36-57).  On May 11, 2023,

the ALJ issued a decision unfavorable to Plaintiff.  (R. 7-28).  Plaintiff appealed, and the Appeals

Council denied Plaintiff's request for review on February 27, 2024, thus making the ALJ's

decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On April 26, 2024, Plaintiff filed a complaint in this Court.  (Compl., ECF No. 1).  On

April 29, 2024, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).  (Consent,

ECF No. 5).  On September 30, 2024, Plaintiff filed a Brief and Statement of Issues in Support of

Request for Review.  (Pl.'s Br., ECF No. 10).  The Commissioner filed a Response on December

30, 2024.  (Resp., ECF No. 15).  Plaintiff filed a Reply on January 13, 2025.  (Reply, ECF No.

16).


## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here

the evidence relevant to the instant request for review.

### A.    Medical Evidence

Plaintiff has experienced mental health and psychiatric issues since childhood.  Her

parents divorced when she was age 11, and she does not have a relationship with her father.  (R.

423).  She was sexually abused by a family member at age 12.  (*Id.*).  Plaintiff also reports a

history of severe depression and suicidal ideations.  (R. 1147).  Plaintiff has treated these issues

pharmacologically on and off over the past 20 years.  (R. 534).

Between December 2020 and August 2021, Plaintiff treated with John Timko, M.D. and

Joseph Lesko, a licensed psychologist, of DGR Behavioral Health in Wyomissing, Pennsylvania.

---

[1]  Because Plaintiff's request for review implicates only her mental impairments, the Court does not summarize the evidence relating to any physical impairments.

(R. 500-44). Her symptoms and clinical findings included anxious and dysphoric mood, isolation, hypersomnia, reduced appetite, anergia, feelings of guilt and worthlessness, frequent passive suicidal ideation, blunted affect, and fair insight and judgment. (*Id.*).

On December 22, 2020, Dr. Timko noted Plaintiff's symptoms and prior diagnoses, and prescribed her several changes in her medication regimen. (R. 544). On February 17, 2021, Dr. Timko noted that Plaintiff's change in medication had been "helpful," and that she was far less anxious, did not have any suicidal or homicidal ideation, was not psychotic or delusional, and had better sleep and appetite. (R. 539). On March 16, 2021, Plaintiff reported having issues concentrating and remembering, feeling hopeless, and feeling isolated. (R. 534-36). On April 14, 2021, Plaintiff reported having recently experienced several "breakdowns." (R. 527). According to Plaintiff, these episodes were "overwhelming." (*Id.*). On May 19, 2021, Lesko noted that "[t]here is an emptiness with which she presents, and [Plaintiff] appears to be seeking help or guidance from others but unable to make use of [interpersonal] learning at this time. [Grounding] and supportive techniques [will] be important at this juncture as she works to build ego strength." (R. 521). Following another alteration to her medication regimen, Dr. Timko noted on June 7, 2021, that Plaintiff was "struggling." (R. 518). Her mood was depressed, and she was having trouble sleeping. (*Id.*). On July 1, 2021, Plaintiff reported that she was sleeping better and that she had not experienced any suicidal ideation recently. (R. 509). She did, however, report that she continued to experience a depressed mood, and she felt "very blunted" at times. (*Id.*). Throughout her treatment with DGR Behavioral Health, both Dr. Timko and Lesko continuously noted that Plaintiff's thinking was logical and that both her insight and judgment appeared to be fair. (R. 500-44).

On April 16, 2021, Plaintiff was admitted for treatment at The Ranch PA—a mental health rehabilitation facility located in Wrightsville, Pennsylvania—due to suicidal

ideation with increased depression and a history of childhood trauma.  (R. 425, 433).  She

participated in individual and group therapy.  (R. 433).  She was discharged on May 6, 2021,

with a diagnosis of major depressive disorder, PTSD, generalized anxiety disorder, and ADHD.

(R. 423, 433).

Plaintiff began outpatient treatment with Retreat Behavioral Health in Ephrata,

Pennsylvania on May 10, 2021.  (R. 1064).  She reported having racing thoughts, heightened

anxiety, always being on edge, feeling isolated, a depressed mood, passive suicidal ideation, lack

of a support system, flashbacks, and lack of motivation.  (*Id.*).  Notwithstanding her self-reported

symptoms, treatment notes showed that she consistently presented with normal mental

examination findings.  (R. 641, 644, 648, 651, 653-54, 658, 661, 664, 667, 670-71, 673-74, 676,

680, 685, 816-17, 819-20, 823).  On November 15, 2021, she was discharged from treatment for

failing to respond to outreach attempts.  (R. 1141).

Plaintiff also treated with Kelly Kollias, a licensed psychologist with AAA

Neuropsychology in Malvern, Pennsylvania.  On November 24, 2021, Kollias noted that

Plaintiff's mental health difficulties were becoming increasingly difficult "as she navigated

postpartum challenges" and being a stay-at-home mother.  (R. 1151).  Kollias also noted that

Plaintiff had recently been diagnosed with Ehlers-Danlos Syndrome, "which would be expected

to increase or exacerbate emotional symptoms and attentional difficulties."  (*Id.*).  Kollias

diagnosed Plaintiff with ADHD, major depressive disorder, generalized anxiety disorder, and

other specified trauma and stressor related disorder.  (*Id.*).  She recommended consistent

individual psychotherapy, strategies and techniques to help with attention and executive

functioning, and sleep hygiene for overall physical and mental health.  (*Id.*).

On September 27, 2021, John Gavazzi, a State agency psychological consultant, found

that Plaintiff had no severe mental health impairments with no limitation in her ability to

understand, remember, or apply information.  (R. 60-61).  He noted that she had a mild limitation in her abilities to interact with others, to concentrate, persist, or maintain pace, and to adapt or manage herself.  (*Id.*).  On June 13, 2022, Molly Cowan, another State agency psychological consultant, also found that Plaintiff had no severe mental health impairments and concurred with Dr. Gavazzi's assessment regarding Plaintiff's limitations.  (R. 70-71).

On March 18, 2022, Ashok Bharucha, M.D., evaluated Plaintiff for a second opinion regarding her medication management.  (R. 1312).  Dr. Bharucha noted a new treatment[2] seemed to help Plaintiff's mood.  (*Id.*).  However, though Plaintiff told Dr. Bharucha that her ADHD symptoms persisted, she admitted that she did not always take her mid-day medication dose.  (*Id.*).

## B.    Nonmedical Evidence

The record also contains nonmedical evidence.  Plaintiff testified at the April 18, 2023, administrative hearing as to her work history, the severity of her medical issues, and how those medical issues affected her functional capacity.  (R. 36-57).  She testified that she lives with her husband and her three-year-old daughter, and that she does "the best [she] can" to care for her daughter.  (R. 39).  She has an associates degree as a veterinary technologist.  (*Id.*).  Plaintiff engages in ADLs such as personal care and grooming, occasionally preparing meals, cleaning,

---

[2]  Throughout the duration of Plaintiff's treatment, her medication regimen changed many times.  In this instance, Dr. Bharucha noted:

> Most recently she has started Ketamine 300 mg po weekly and finds that this has helped her mood more than anything else.  She is tolerating it well.  Her concern, however, is that her ADHD symptoms are not well managed. . . .  [S]he did have a positive response to Adderall IR and ER, but experienced anxiety and irritability on both.  She tolerated Vyvanse better but did not feel her focus was as sharp as she hoped for even on the maximum dose.

(R. 1312).

driving, and occasionally meeting with friends and family members. (R. 40-41). On "bad" days, she does not leave the house. (R. 43). Plaintiff worked for a time after giving birth to her daughter in 2019, but eventually quit her job because she could not handle the physical and emotional demands of working. (R. 46). She testified that she had crying spells and that she was not friendly with coworkers. (*Id.*). Plaintiff noted that due to her mental health issues, she has difficulty concentrating. (R. 50). She gets frustrated because she cannot complete simple tasks and struggles to follow directions. (*Id.*).

Plaintiff also completed an adult function report, noting that she deals with chronic pain and fatigue, her anxiety and depression make interacting with people difficult, and she struggles with lack of motivation. (R. 235-44). She also noted that before her mental health issues, she used to socialize regularly and was more physically active. (R. 237). Monika Rottler, the claimant's mother, completed two third-party function reports. (R. 246-60, 285-310). Per her reports, the claimant has a history of difficulty sleeping, has frequent joint pains, a lack of endurance, and forgetfulness which affect her ability to perform daily tasks. (R. 255-56, 291-93).

## III.    ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which he made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.    The claimant has not engaged in substantial gainful activity since July 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: hypermobility with Ehlers

Danlos Syndrome (EDS), polyarthralgia, myalgia, and scoliosis (20 CFR

404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform light work as defined in

20 CFR 404.1567(b) except occasional climbing of ramps/stairs, balance, stoop,

kneel, crouch, and crawl, never climbing of ladders, ropes, or scaffolds, frequent

bilateral gross and fine manipulation, and avoid exposure to extreme cold,

wetness, humidity, vibration, and hazards such as heights and machinery.

6.      The claimant is capable of performing past relevant work as a sales associate.

This work does not require the performance of work-related activities precluded

by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant has not been under a disability, as defined in the Social Security

Act, from July 1, 2020, through the date of this decision (20 CFR 404.1520(f)).

(R. 12-21).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it.  *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In her request for review, Plaintiff raises two issues: (1) the ALJ erred in evaluating Plaintiff's mental impairments; and (2) the ALJ erred by failing to address Plaintiff's objections to the VE's testimony.  (Pl.'s Br., ECF No. 10, at 1).

### A.    Plaintiff's RFC

#### 1.    The Parties' Arguments

Though Plaintiff presents the alleged errors regarding the ALJ's evaluation of her mental impairments as a single claim, it is clear from her brief that she actually advances two arguments. First, she argues that the ALJ erred in determining that Plaintiff's bipolar disorder, depression, anxiety, ADHD, and other trauma-related disorders were not "severe" because the record evidence illustrated that they "ha[d] more than a minimal impact on [her] ability to perform basic activities."  (Pl.'s Br., ECF No. 10, at 11, 13).

Second, Plaintiff argues that even accepting the ALJ's finding that her mental impairments were not severe, the ALJ still erred because he failed to consider how Plaintiff's mild limitations in the functional areas of interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself affected Plaintiff's RFC.  (R. 13-20). Plaintiff highlights that, "[i]n assessing [the] RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" (Pl.'s Br., ECF No. 10, at 14 (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996))).

In response, the Commissioner argues that Plaintiff did not meet her burden to show that her mental impairments are anything more than non-severe.  (Resp., ECF No. 15, at 4-6).  He contends that the ALJ's determination was supported by the record evidence, specifically the opinions of State agency consultants Gavazzi and Cowan, who both opined that Plaintiff's mental impairments were non-severe.  (*Id.* at 9-10).  Moreover, he states that "[t]he record

indicated that Plaintiff's mental status examinations were generally unremarkable with treatment as prescribed, and Plaintiff did well with medication management." (*Id.* at 7). The Commissioner points to the fact that Dr. Timko and Lesko both continuously noted that Plaintiff's thinking was logical and that both her insight and judgment appeared to be fair. (*Id.* (citing R. 539)). He also highlights that Plaintiff's treatment notes with Retreat Behavioral Health showed that she consistently presented with "normal mental examination findings." (*Id.* at 8 (citing R. 642, 644, 648, 651, 653-54, 658, 661, 664, 667, 670-71, 673-74, 676, 680, 685, 816-17, 819-20, 823)). Finally, the Commissioner notes that Plaintiff admitted to Dr. Bharucha that she did not strictly follow her medication regimen. (*Id.* at 9 (citing R. 1312)). According to the Commissioner, the record evidence in sum supported the ALJ's determination that her mental impairments were non-severe.

Next, in response to Plaintiff's argument that the ALJ failed to adequately consider her mild limitations in the RFC determination, the Commissioner observes that "there is no legal requirement that a mild limitation mandates a corresponding RFC limitation." (*Id.* at 11 (citing *Northrup v. Kijakazi*, No. 20-0412, 2022 WL 889968 (M.D. Pa. Mar. 24, 2022))). In citing *Northrup*, the Commissioner contends that the ALJ did in fact consider Plaintiff's mild limitations when he stated at the beginning of his step two analysis that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," (R. 13), and then at the end of his step two analysis when he stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental

function analysis.

(R. 16).  And then at the RFC assessment stage, he further stated:

> In making this finding, the undersigned has considered all
> symptoms and the extent to which these symptoms can reasonably
> be accepted as consistent with the objective medical evidence and
> other evidence, based on the requirements of 20 CFR 404.1529 and
> SSR 16-3p.  The undersigned also considered the medical
> opinion(s) and prior administrative medical finding(s) in
> accordance with the requirements of 20 CFR 404.1520c.

(R. 16-17).  Ultimately, the Commissioner maintains that based on this language, the ALJ

"properly determined that Plaintiff did not experience any functional limitations as a result of her

non-severe mental impairments."  (*Id.* (citing *O'Connor v. Comm'r of Soc. Sec.*, 466 F. App'x

96, 102 (3d Cir. 2012))).

In reply, Plaintiff cites *Gunn v. Kijakazi*, 705 F. Supp. 3d 315 (E.D. Pa. 2023), wherein

this Court rejected the contention that "boilerplate" language such as that used by the ALJ here

satisfies the ALJ's duty to "'consider' *all* impairments, even non-severe ones" at the RFC

assessment stage.  (Reply, ECF No. 16, at 4-5 (citing 705 F. Supp. 3d at 333)).

For the reasons that follow, I agree with Plaintiff, in part.  Though the ALJ's initial

determination that Plaintiff's mental impairments were non-severe was supported by the record

evidence, his subsequent RFC assessment was in error because he failed to consider whether

Plaintiff's mild limitations required a corresponding RFC limitation.  As such, this matter is

remanded for consideration of all of Plaintiff's medically determinable impairments in the

formulation of the RFC.

### 2.    Analysis

#### i.    The ALJ's Determination That Plaintiff's Mental Impairments Were Non-severe

Plaintiff first argues that the ALJ erroneously found at step two of the sequential analysis

that her bipolar disorder, depression, anxiety, ADHD, and other specified trauma and stressor

related disorders are not severe impairments.  (Pl.'s Br., ECF No. 10, at 9-15; R. 13).  In cases involving mental impairments, the SSA regulations set forth the analysis for determining whether the mental impairment is severe.  20 C.F.R. § 404.1520a.  If the ALJ initially determines that a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment, then he must assess the claimant's limitations in four functional areas to determine whether the impairment is "severe."  20 C.F.R. § 404.1520a.  The four functional areas are: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  If the ALJ rates the degree of the claimant's limitations as "none" or "mild," he generally will conclude that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).

A medical diagnosis is insufficient to establish severity at step two; Plaintiff also must present evidence that a limitation significantly limited her ability to do basic work activities.  *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a)); *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004).  Further, a severe impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience.  *See Bowen v. Yuckert*, 482 U.S. 137, 149-51, (1987).  However, "[t]he key question when reviewing the ALJ's step two determination is not whether Plaintiff's impairments were in fact severe, but, whether substantial evidence supports the ALJ's finding that those impairments were not severe."  *Golubosky v. Comm'r of Soc. Sec.*, No. 3:13-196, 2014 WL 3943029, at *3 (W.D. Pa. Aug. 12, 2014).  Plaintiff retains the burden of showing that an impairment is severe.  *Bowen*, 482 U.S. at 146 n.5.

12

Here, the ALJ determined that Plaintiff had no or only mild limitations in the four functional areas.  He concluded that she had no limitation in understanding, remembering or applying information because she consistently presented with intact memory and normal thought processes, she admitted that she did not always follow her ADHD medication regimen as prescribed, and her ADLs demonstrated no limitations in this functional area.  (R. 15).  He found that she had a mild limitation in interacting with others, citing her "history of anxiety and trauma" but also noting that she is able to shop in stores and take her daughter to the library, has never lost a job due to problems getting along with people or authority figures, and presented as cooperative and pleasant with normal motor behavior and good eye contact.  (*Id.*). The ALJ assessed a mild limitation in concentrating, persisting, or maintaining pace.  He noted Plaintiff's history of ADHD and reported difficulty concentrating and completing tasks, but highlighted that she consistently presented fully alert and oriented with normal attention and concentration and intact cognitive and functional status.  (*Id.* (citing 630-87, 800-71, 1311-20, 1368-88)).  Lastly, the ALJ determined that Plaintiff had a mild limitation in adapting or managing herself due to her difficulty handling stress and changes in routine.  (*Id.*).  The ALJ noted, however, that Plaintiff was able to identify coping skills to manage her anxiety and depression while participating in therapy, and that she maintained an appropriate level of personal hygiene, made plans independently, and cared for her child.  (*Id.* at 15-16).  Accordingly, the ALJ concluded that Plaintiff's mental limitations were not severe.  (*Id.* at 16).

Substantial evidence supports the ALJ's determination in this respect.  42 U.S.C. § 405(g); *Hartranft*, 181 F.3d at 360.  It is well-settled that the mere diagnosis of a condition is never enough to prove disability.  *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990).  The claimant must prove that she has functional limitations derived directly from her medically determinable impairments that would prevent all work.  *Id.*  Here, the ALJ noted that

Plaintiff's mental impairments resulted in the above-mentioned mild limitations. However, he also noted contemporaneously that these limitations did not result in greater than "minimal limitation[s]" in Plaintiff's ability to perform basic work activities. (R. 16). This conclusion is supported by the record, as follows: (1) throughout her treatment with DGR Behavioral Health, both Dr. Timko and Lesko continuously noted that Plaintiff's thinking was logical, that both her insight and judgment appeared to be fair, and that she consistently presented as well-groomed with no psychosis or delusions, (R. 500-44); (2) throughout her treatment with Retreat Behavioral Health, Plaintiff continuously had normal mental examinations, (R. 641, 644, 648, 651, 653-54, 658, 661, 664, 667, 670-71, 673-74, 676, 680, 685, 816-17, 819-20, 823), and she ultimately was discharged from that facility for failure to respond to outreach attempts, (R. 1141); (3) Plaintiff admitted that she did not always follow her medication regimen (R. 1312); and (4) both State agency psychological consultants determined that Plaintiff's mental impairments were not severe, (R. 60-61, 70-71).

Though Plaintiff counters by pointing to the consistent documentation of suicidal ideation, longstanding anxiety, panic attacks, social phobia, depressed and dysphoric mood, feelings of isolation, hypersomnia, reduced appetite, anergia, short-term memory difficulties, poor focus, feelings of guilt and worthlessness, blunted and labile affect, restless behavior, and anhedonia, (Reply, ECF No. 16, at 1), this is simply an invitation for this Court to impermissibly reweigh the evidence. *See Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (noting that district courts are not "empowered to weigh the evidence or substitute [their] conclusions for those of the fact-finder") (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Even if the record evidence could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds*, 807 F.2d at 58 ("While there is other evidence in the record that could support a finding of disability based on

14

pain, our inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence."). Simply pointing to evidence that might have supported a contrary conclusion by the ALJ does not warrant remand. *Lucrecia T. v. O'Malley*, No. 23-3664, 2024 WL 3824859, at *5 (E.D. Pa. Aug. 14, 2024).

Accordingly, to the extent that Plaintiff argues that remand is required because the ALJ improperly determined that her mental impairments are not severe, this Court disagrees.

### ii.    The ALJ's RFC Assessment

Plaintiff also asserts that the ALJ failed to account for her mental limitations in the formulation of her RFC. (Pl.'s Br., ECF No. 10, at 13-15). After concluding that Plaintiff had no or only mild limitations in the four functional areas, as set forth above, the ALJ stated that that conclusion was not a residual functional capacity assessment. (R. 16). Instead, he noted that the RFC assessment would "require[] a more detailed assessment" at steps four and five. (*Id.*). He then further noted that his later RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (*Id.*). Then in the RFC section of his opinion, the ALJ noted that he had considered all the medical opinions and record evidence. (*Id.* at 18). His discussion of Plaintiff's mental limitations consisted of a reference that the State agency psychological consultants' opinions had been "set forth and discussed in detail above, including a full evaluation of their persuasiveness, specific to the finding regarding the severity of the claimant's mental health impairments." (R. 19). Then he stated generally: "As noted above, the claimant's mental health impairments result in no more than mild limitations with her mental status examination findings within normal limits overall since the alleged onset date." (R. 20). However, this assessment did not discuss any other evidence regarding Plaintiff's mental health, and it did not state how, if at all, these mild limitations had

been addressed.  (R. 16-20).  Nor did the RFC itself include any mental limitations.  (R. 16).

The boilerplate language utilized by the ALJ in discussing (or failing to discuss) the import of Plaintiff's mild limitations does not satisfy the requirement contained in the social security regulations that the ALJ consider all impairments, even non-severe ones, in formulating a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *4 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013) (observing that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five"); *Balla v. Comm'r of Soc. Sec.*, No. 18-00386, 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) ("passing reference" to mild mental limitations during discussion of State agency psychological experts' opinions was insufficient because even though the impairments might impose only "*de minimis*" limitations or "require minor modifications," it was not up to the court to "independently make" those findings) (citing and quoting *Curry v. Comm'r of Soc. Sec.*, No. 15-07515, 2017 WL 825196, at *4-6 (D.N.J. Mar. 2, 2017)); *Curry*, 2017 WL 825196, at *4-6 (same; mix of mild and moderate limitations); *Kich v. Colvin*, 218 F. Supp. 3d 342, 357 (M.D. Pa. 2016) (remanding ALJ decision that "made no explicit finding that the deficiencies were so minimal that they would not limit Plaintiff's ability to perform simple tasks," even though the ALJ determined that she would have only mild limitations if she stopped her alcohol use).  On remand, the ALJ may determine that Plaintiff's mild mental limitations warrant only *de minimis* or even no corresponding restrictions in the RFC, but it is not the province of the Court to make that determination here.  *Balla*, 2019 WL 2482661, at *3; *Curry*, 2017 WL 825196, at *4-6.

For these reasons, this matter is remanded for consideration of all of Plaintiff's medically determinable impairments in the formulation of the RFC.

**B.    Plaintiff's Objections to the VE's Testimony**

In addition, Plaintiff argues that the ALJ erroneously determined at step four that she could return to her past relevant work (PRW) as a sales associate because the ALJ failed to address her objections to the VE's testimony. (Pl.'s Br., ECF No. 10, at 15-16). Because I remand this matter for further consideration of the limiting effects of Plaintiff's impairments on her RFC, which may in turn affect the ALJ's determination that Plaintiff can perform her PRW, I do not address Plaintiff's argument on this issue. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because the ALJ may reverse his findings after remand). It is possible that, on remand, the ALJ may reach different conclusions as to Plaintiff's ability to perform PRW, thus obviating the need for consideration of this issue.

**VI.    CONCLUSION**

For the reasons set forth above, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum. An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge